Hithcock, J.
The great object of the pleadings in a case, is to arrive at a specific issue upon a given and material fact; but it is not necessary nor proper to set forth in the pleadings the evidence by which the existence of such a fact is to be substantiated before a jury. So long as pleadings are so framed as to effect this object, they conduce to a correct administration *of justice. But when the science of pleading is perverted by the statement of facts known not to exist, or by efforts to entrap an adversary, a principle which was intended for the promotion of justice is, not unfrequently, so applied as to pervert it. In the case now before the court, the record is so incumbered by the verbosity of the pleas, as to render it extremely difficult to determine what particular fact or facts the pleader intended to put in issue. From careful examination, however, we are led to suppose the defenses intended to be relied on in the several pleas are as follows:
1. That the single bill which is declared on, was not binding in law, because certain articles of separation between John and Mary Bettle, and Wilson as trustee, and which by the pleader is supposed to have been the consideration of this single bill, were against the policy of the law, and therefore that the bill itself is-void.
*267 This article of separation is made part of the record.
2. That the individual for whose use, support, and maintenance the bill was given, died before the same fell due; that the same was not necessary for her support and maintenance, and therefore that the consideration had failed.
3. That the said Mary, for whose use the bill was given, asserted and declared that she would not be bound by any act of her attorney, when, as is averred, the power under which the attorney was authorized to act, was the consideration of the single bill, and therefore the consideration of said single bill has failed.
4. The fourth plea is not materially variant from the second, except that it is more concise, and does not, in terms, refer to the article of separation, so that the same can be by oyer made part of the plea.
Before proceeding to the consideration of these several pleas, it may not be improper to say that the questions involved in this case, and growing out of the controversy between John Bettle and his wife, have heretofore received no little share of the attention of the members of this court. Soon after the death *of his wife, John Bettle filed his bill, in the court of common pleas, to be relieved from the liabilities assumed by him under the articles of separation, and to have the said articles rescinded. This bill was filed in Clermont county, and was appealed to the Supreme Court. The case was taken under advisement, and finally decided in Hamilton county, at the spring term of the court, 1831. According*to my recollection, the same questions were then raised as are now presented, and the case of the complainant sustained by substantially the same arguments. The court, however, dismissed the bill.
It was again presented to the court on a writ of error to the court of common pleas of Clermont county, to reverse a judgment rendered by that court, upon the first bill or note for $350 named in the articles of agreement. That case was taken under advisement, and decided in 'Hamilton county, in 1842, affirming the judgment of the court of common pleas. Not being at that time a member of the court, I can not state the grounds upon which the decision waB made, but am informed that it was made upon consultation of all the judges of the court. The suit is upon the last of the two notes, and although we can not flatter ourselves that we shall be able to make a decision which will be satisfactory *268 to all concerned, we do hope to make one which will put an end to the litigation.
Under the first plea, it seems to be necessary to ascertain what was in fact the consideration of the note or bill in suit. Now, no doubt can exist upon this point, if we for a moment turn our attention to the articles of separation. Bettle and wife had agreed to separate, and the terms were fixed, when he was to give her one-half of his personal property and $1,000 in addition. But in order to carry out this agreement and secure the object of it, it was necessary to have a trustee. Wilson was such trustee, and he bound himself by covenant to indemnify Bettle against any claim, cost, or charge, on account of his wife during his life, or against any claim for dower, which she might have after his death. It was not, then, the separation alone, which was the consideration of *this note, nor a desire on the part of Bettle to provide for his wife, but it was the covenants of Wilson as contained in the articles of separation. But for these, the notes would not have been executed.
But it is said that these articles of separation, and the covenants' therein contained, are all void,-as being against public policy; and a multitude of authorities are cited to show, not that courts have held such arrangement null and void, but that many men acting as judges and chancellors have repeatedly expressed the opinion that they should originally have been held void. And it is further insisted, that it is alone in courts of equity that it can be sustained; and, as this is a suit at law, no judgment can be rendered in favor of the payee of the bill. We do not readily see that this consequence follows. For, admitting that no suit at law can be sustained upon articles of separation like those in the record, yet, if such articles are good in courts of equity, it would seem that covenants contained in them would be a good and sufficient consideration for a note or bill which was no part of such article, so that the same could bo collected at law.
But are such articles of separation void, either in law or equity? I hav,e not time to remark upon all the authorities cited by council. Clancy, in his treatise of the rights, duties, and liabilities of husband and wife, after a review of the authorities upon the validity of agreements of this character between husband and wife, at page 240, says, “ From these authorities, it may be inferred that it is competent at this day to a husband and wife to enter into an *269 agreement, through the medium of trustees, that they shall thenceforth cease to cohabit; and that, during that separation, he shall pay to her an allowance for her support, the due discharge of which, both courts of law and equity will enforce; and also, that the wife may covenant to pay a portion of her separate property to her husband, on the terms of his suffering her to live absent from him; but that neither she nor her husband will be assisted by the court, in getting possession of that property, with a view to carry this ^agreement into effect, if that agz’eement bears the appearance of irregularity or unfairness. The same principle is recognized in 2 Stoz-y’s Eq. G52-654. We suppose such to be the rule of law where the separation actually takes place. But, whether either a court of law or of equity will enforce such contract, when the agreement is for a future separation, is a different question, and is not necessary,,to be settled in the present case, as in this case the separation did actually take place.
It is admitted by counsel that such is the rule of decision in England, although insisted that it should not be adopted in Ohio. And it is urged, as one reason, that, in' England, such rule is not adopted except in cases where the separation is for reasons which would jzzstify a divorce from bed and board; and it is said that, in this state, there can not be, for any cause, a divorce from bed and board ; therefore, no case can arise here whei’e such articles of separation should be held as valid.
True, by our law, there can not be a divorce from bed aúd board merely; but we divorce from the bands of matrimony for the same causes for which in England there might be a divorce from bed and board. And it would be strange, indeed, where the conduct of either party has been such as to authorize the other to obtain a divoz*ce, they could not agree to live separate, upon a separate maintenance, furnished by the husband. The causes of separation in the case now under considez'ation are not specifically alleged. But it is stated that there were difficulties which rendered it necessary to separate. In the opiuion of the court, there is nothing disclosed upon the recoz’d which would justify us in saying that this was a void contract.
By the second ploa, the defense is based upon the ground of the death of the wife; and it is claimed that her death released the obligor from the payment of this note, inasmuch as the avails of it wez'e not wanted for her support.
*270, 271 This contract is not a contract to pay, from time to time, as the payments may be wanted for the sustenance of the wife. *It is a contract by which the husband agrees to pay $1,000, in consideration of the covenants on the part of Wilson, as set forth in the articles of separation. Had his wife lived fifty years, he was under no obligation to pay more; and if she lived but one year, shall he pay less? Wo think not. The contract was obligatory, and he must abide by it. The cases arising under the English poor-laws, and which have been cited by counsel, are not applicable to a case like this. This is not a contract between public officers who are bound to perform the duties of overseers of the poor and individuals; but it is a contract between individuals, who acquire rights as against each other, which the law will enforce, by compelling each to do what they have agreed to do.
The third plea sets up that the consideration of the note or bill, was in a certain power of attorney, executed by Mary Bettle to one Joseph Bettle, and that she declared she would not be bound by it. In this plea, the articles of separation are referred to, and, by oyer, made part of the plea.
Taking the whole together, then, the plea is contradictory. The articles of ^separation show that the covenants of Wilson were the consideration of the note in suit, and it is stated that the power of attorney was the consideration. Both might have operated upon the mind of the obligor. But, in the plea, it is alleged that the power of attorney was the only consideration. We think otherwise. But, suppose it were so, has the consideration failed? From aught that' appears in the plea, the power of attorney was in full force, and just as available up to the time of the death of Mary Bettle, as it -was at the time of its execution. It was never revoked. The statements of the plea are to the effect that she threatened to revoke it; not that she did do it. Whether that power of attorney was ever of any validity, is a different question, and one which we are not now called upon to decide.
The fourth plea is Substantially the same as the second; and, in deciding upon the validity of one, the other is disposed of.
But it is claimed upon the part of the plaintiff in error, that *the articles of separation are improperly introduced in the record. Inasmuch as no profert was made of them in the pleas, it is said the plaintiff, in the original suit, had no right to crave oyer. The case, so far, has been considered by the court, as if oyer had been *272 regularly craved, and the deed was properly a part of the record. It has been so considered, because it would be utterly impossible to decide upon the merits of the defense, without a careful examination of this instrument. The defendant seems to rely upon it in making his defense. If the instrument was valid, his defense failed; if not, he was not liable. He should have made profert of it. We had hoped, too, that the object of the special pleas in this case was a legitimate one. That it was to elicit the opinion of the court upon the legal effect of the facts existing in the case, not to entrap an adversary. It is true, the plaintiff, by his replication, might have placed this deed upon the record. But this would only have served further to incumber that record. The real points in controversy are ah well before the court in the mode which has been adopted, by craving oyer and demurring, as they would have been by any further extension of the pleadings. But, as the objection is made, that the plaintiff had no right to oyer, because profert was not made of the instrument, we are bound to say that we understand the general rule of law to be as claimed by the counsel for the defendant.
But, excluding the deed from the record, what is the state of the pleadings? The declaration contains two counts; the one special, the other general. The pleas are in effect to the first count. The second is unanswered. To these pleas there is a demurrer. Now we suppose the law to be, that a plea must, in some shape, cover the whole declaration; and, if it does not, that it is bad on demurrer. As the pleas in this case are not manifestly answers to the entire declaration, but only to the first count, leaving the other unanswered, the court of common pleas decided correctly in sustaining the demurrer; and the judgment of that court must bo affirmed.